625 F.2d 1313
 8 O.S.H. Cas.(BNA) 1467, 1980 O.S.H.D. (CCH) P 24,505
BURKART RANDALL DIVISION OF TEXTRON, INC., a corporation,
Plaintiff-Appellant,
v.
Ray MARSHALL, Secretary of Labor, U. S. Department of Labor,
et al., Defendants-Appellees.
 No. 79-1853.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 24, 1980.
Decided May 27, 1980.
 
 William T. Weidle, Jr., St. Louis, Mo., for plaintiff-appellant.
 Charles I. Hadden, Corin A. Clauss, Benjamin W. Mintz, Allen H. Feldman, Thomas L. Hotzman, Washington, D. C., for defendants-appellees.
 Before FAIRCHILD, Chief Judge, and SPRECHER and WOOD, Circuit Judges.
 SPRECHER, Circuit Judge.
 
 
 1
 Plaintiff Burkart Randall Division of Textron, Inc. (Burkart) filed suit in the court below seeking declaratory and injunctive relief prohibiting an attempted inspection of its Cairo, Illinois facility by a compliance officer of the Occupational Safety and Health Administration (OSHA). In an order entered July 9, 1979, the district court denied plaintiff's motion for summary judgment, granted OSHA's motions for summary judgment and to compel compliance with the inspection warrant issued to the compliance officer, and held plaintiff in civil contempt for failure to comply with the warrant. Burkart appeals from this order on several grounds. First, Burkart contends that the district court erred as a matter of law in applying a relaxed probable cause standard in a case in which traditional, criminal probable cause should have been required. Second, Burkart argues that regardless of the appropriate probable cause standard, the warrant in this case was not properly issued because the facts offered by OSHA in support of its warrant application fail to satisfy even the relaxed standard applied by the district court. Finally, Burkart asserts that even if probable cause did exist for issuance of a warrant, the warrant issued here is invalid because overbroad in scope. We conclude that the district court applied the proper probable cause standard, that this standard was satisfied and the warrant properly issued, and that the warrant is not overbroad in scope. Accordingly we affirm the judgment appealed from.
 
 
 2
 * On May 26, 1978, an OSHA, compliance officer appeared at plaintiff's Cairo, Illinois facility for the purpose of conducting an inspection of the premises to insure compliance with the Occupational Safety and Health Act of 1970 (Act), 29 U.S.C. §§ 651-78. Plaintiff refused to permit the inspection because the officer did not have a warrant. On August 2, 1978, the officer went before a United States Magistrate with an application for an inspection warrant. The sworn application stated that OSHA had received, on February 9 and March 13, 1978, complaints from two employees of Burkart. The complaints had described specific unsafe and unhealthful conditions at plaintiff's facility.[1] On the basis of this information, OSHA had determined that there were reasonable grounds to believe violations of the Act existed at that facility and therefore sought a warrant to inspect the premises to uncover these and other violations. The Magistrate found that probable cause existed and accordingly issued the requested warrant.
 
 
 3
 Plaintiff filed this action the following day, August 3, 1978, and obtained a temporary restraining order prohibiting enforcement of the warrant. That prohibition was extended during the proceedings below. In the district court, plaintiff argued that while a relaxed probable cause standard is appropriate when a warrant is sought for an inspection to be conducted pursuant to a reasonable legislative or administrative plan, inspections induced by employee complaints must be judged according to the criminal probable cause standard. According to plaintiff, OSHA's warrant application fell far short of meeting this standard. Alternatively, plaintiff argued that even if relaxed, administrative probable cause was all OSHA need show in this case, such a showing had not been made as illustrated by OSHA's failure to satisfy even the minimal requirements of reasonableness and informant reliability established by the Act, 29 U.S.C. § 657(f)(1). Finally, plaintiff argued that the warrant, even if properly issued, was overbroad in scope because it authorized an inspection of the entire premises when the probable cause, if any, related to limited portions of Burkart's facility.
 
 
 4
 The district court initially agreed with Burkart. In an order entered January 8, 1979, the court enjoined execution of the warrant because the warrant application failed to show that the proposed inspection was pursuant to a reasonable administrative or legislative plan and failed to give any indication of the reliability of the employee-informants. OSHA filed a motion to amend this judgment in light of our decision of January 2, 1979 in In the Matter of: Establishment Inspection of: Gilbert & Bennett Mfg. Co, 589 F.2d 1335 (7th Cir.), cert. denied, 444 U.S. 884, 100 S.Ct. 174, 62 L.Ed.2d 113 (1979). The district court granted the motion and found that, under Gilbert & Bennett, the warrant application need not demonstrate the reliability of the informant. On this basis it ruled that its initial order had been in error in imposing such a requirement and accordingly found the warrant supported by probable cause. Burkart appeals from this order, raising the arguments described above.
 
 II
 
 5
 Section 8(a) of the Act, 29 U.S.C. § 657(a),[2] authorizes the Secretary of Labor to enter and inspect workplaces in order to carry out the purposes of the Act. Although section 8(a) itself does not indicate whether warrants are necessary for such inspections, after Marshall v. Barlow's, Inc., 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), it is clear that a nonconsensual OSHA inspection may be conducted pursuant to section 8(a) only if a warrant is first obtained. Such a warrant is to issue only upon a showing of some degree of probable cause; precisely what degree is required in particular cases has been the topic of much post-Barlow's litigation and is the issue before us in this case. See, e. g., The Babcock & Wilcox Co. v. Marshall, 610 F.2d 1128, 1130 (3d Cir. 1979).
 
 
 6
 In Barlow's, the Supreme Court indicated that there are two alternative methods by which probable cause for an OSHA inspection may be established:
 
 
 7
 Whether the Secretary proceeds to secure a warrant or other process, with or without prior notice, his entitlement to inspect will not depend on his demonstrating probable cause to believe that conditions in violation of OSHA exist on the premises. Probable cause in the criminal law sense is not required. For purposes of an administrative search such as this, probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that "reasonable legislative or administrative standards for conducting an . . . inspection are satisfied with respect to a particular (establishment)." Camara v. Municipal Court, 387 U.S. (523), at 538, 87 S.Ct. (1727), at 1736 (15 L.Ed.2d 930.)
 
 
 8
 436 U.S. at 320-21, 98 S.Ct. at 1824 (footnote omitted). The parties agree, for purposes of this appeal, that under Barlow's, when a warrant is sought for an inspection to be conducted pursuant to a legislative or administrative plan, probable cause is to be judged according to the relaxed or flexible standard of administrative probable cause establish in Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) and See v. City of Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967). Burkart argues, however, that application of this standard is inappropriate where the warrant is sought on the basis of "specific evidence of an existing violation," such as the employee complaints in this case. Because of the particularized suspicion, individualized focus and greater potential for harassment in the employee complaint situation, Burkart asserts that traditional criminal probable cause should be required to justify issuance of a warrant.
 
 
 9
 This court addressed and rejected precisely this contention in In the Matter of: Establishment Inspection of: Gilbert & Bennett Mfg. Co., 589 F.2d 1335 (7th Cir.), cert. denied, 444 U.S. 884, 100 S.Ct. 174, 62 L.Ed.2d 113 (1979).[3] In Gilbert & Bennett, the employer argued that the Barlow's language quoted above should be interpreted to mean
 
 
 10
 that when a warrant is applied for on the basis of an employee complaint, the general standard of probable cause applied in criminal matters is required.
 
 
 11
 Id. at 1338. This court disagreed with that argument, placing great weight upon the specific statement of the Barlow's Court that "(p)robable cause in the criminal law sense is not required." Barlow's, supra, 436 U.S. at 320, 98 S.Ct. at 1824, quoted in Gilbert & Bennett, supra, 589 F.2d at 1338.[4] We also relied upon the Supreme Court's citation of See and Camara to find that administrative probable cause is the proper standard in employee complaint cases:
 
 
 12
 Because of the aforementioned quote from Barlow's negating the requirement of probable cause in the criminal sense and because the OSHA inspections involved in these appeals are similar to those in Camara and See, the less stringent probable cause test must be applied here.
 
 
 13
 589 F.2d at 1339. Thus, the position of this court in Gilbert & Bennett was that flexible, administrative probable cause, as established in Camara and See, is the appropriate standard for issuance of a warrant for an OSHA inspection whether the warrant is sought on the basis of an administrative plan or employee complaints.
 
 
 14
 Plaintiff urges that we reject this position in this case, arguing that it is based on a misinterpretation of the Barlow's opinion and that the "better reasoned view" counsels adherence to traditional probable cause for all but administrative plan inspections. Plaintiff contends that Michigan v. Tyler, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), demonstrates that the administrative probable cause standard is to apply only when a warrant is sought pursuant to an administrative plan.[5] Contrary to plaintiff's assertion, Tyler supports precisely the position taken by this court in Gilbert & Bennett. The Tyler Court summarized its ruling as follows:
 
 
 15
 In summation, we hold that an entry to fight a fire requires no warrant, and that once in the building, officials may remain there for a reasonable time to investigate the cause of the blaze. Thereafter, additional entries to investigate the cause of the fire must be made pursuant to the warrant procedures governing administrative searches. See Camara, 387 U.S., at 534-539, 87 S.Ct., at 1739-1740; See v. Seattle, 387 U.S., at 544-545, 87 S.Ct., at 1733-1736; Marshall v. Barlow's, Inc., ante, (436 U.S.) at 320-321, 98 S.Ct., at 1824-1825. Evidence of arson discovered in the course of such investigations is admissible at trial, but if the investigating officials find probable cause to believe that arson has occurred and require further access to gather evidence for a possible prosecution, they may obtain a warrant only upon a traditional showing of probable cause applicable to searches for evidence of crime.
 
 
 16
 436 U.S. at 511-12, 98 S.Ct. at 1951 (citation omitted). Administrative probable cause is sufficient, under Tyler, even where officials conduct an inspection which is individualized in focus and in response to a particular event there, a fire on the premises to be inspected. Criminal probable cause is required only when the investigation changes from purely administrative to criminal in nature. In this OSHA inspection case, unlike Tyler, there was no possibility of criminal action. Tyler therefore permits the issuance of a warrant upon a showing of administrative, rather than criminal, probable cause.
 
 
 17
 Neither Tyler nor the other authorities cited by plaintiff support its position in this case. Our research indicates that virtually every federal court to consider the issue has concluded that criminal probable cause is not required for issuance of a warrant for an OSHA inspection based on employee complaints.[6] We, therefore, adhere to our view that Gilbert & Bennett properly interpreted Barlow's and we will continue to permit issuance of warrants in employee complaint cases upon a showing of administrative probable cause.
 
 III
 
 18
 Having concluded that the district court properly applied the administrative probable cause standard in this case, we need not decide whether the evidence offered in support of the warrant application satisfies the more stringent criminal probable cause standard. Burkart argues, however, that the evidence is insufficient to establish even administrative probable cause. It is to this argument that we now direct our attention.
 
 
 19
 The administrative probable cause standard requires that any inspection be reasonable: the public interest in the inspection must outweigh the invasion of privacy which the inspection entails. See Camara v. Municipal Court, 387 U.S. 523, 536-39, 87 S.Ct. 1727, 1734-36, 18 L.Ed.2d 930 (1967); Marshall v. North American Car Co., 476 F.Supp. 698, 703 (M.D.Pa.1979). In determining whether this standard was satisfied in this case, we may consider only the evidence before the Magistrate at the time of application for the inspection warrant. See Gilbert & Bennett, supra, 589 F.2d at 1342. Where a warrant application is based upon an employee complaint, it is not absolutely necessary that the complaint itself be provided to the Magistrate. North American Car, supra, 476 F.Supp. at 704. However, a conclusory statement in the application that employee complaints have been received by OSHA, without more, is insufficient to establish probable cause. Weyerhaeuser Co. v. Marshall, 592 F.2d 373, 378 (7th Cir. 1979). The application must at least inform the Magistrate of the substance of the employee complaints, so that the Magistrate may exercise independent judgment as to whether an inspection is justified, rather than acting as a mere rubber stamp validating the decision already reached by the Secretary. Weyerhaeuser Co., supra, 592 F.2d at 378.
 
 
 20
 The only information before the Magistrate in this case was the sworn warrant application submitted by the OSHA compliance officer.[7] The application stated that OSHA had received complaints from two employees of Burkart. It described the specific unsafe and unhealthful working conditions alleged in the complaints and noted that the complaints asserted that these conditions posed a threat of serious physical harm to Burkart's employees. The application then stated that OSHA had determined from this information, that reasonable grounds existed to believe that violations of the Act or regulations issued thereunder would be found on Burkart's premises. Plaintiff's Appendix at 1-2. While the application is far from a model of specificity and clarity, we believe the district court properly concluded that the information contained in it is adequate to establish the requisite degree of probable cause.
 
 
 21
 Plaintiff attacks the district court's conclusion because, although the warrant application is supported by the oath of the compliance officer, the allegations on which the finding of probable cause is based the allegations contained in the employee complaints are not so supported. Brief of Plaintiff at 14-17. In the context of an administrative probable cause determination, however, the oath of the compliance officer is entitled to greater weight than plaintiff seems willing to accord it. In Gilbert & Bennett, supra, the employer attempted to challenge the warrant application by obtaining from OSHA discovery of information regarding the employee complaint. This court rejected that attempt in part because of the significance attached to the compliance officer's oath:
 
 
 22
 (T)he warrant application, which referred to an "employee complaint," incorporated the sworn affidavit of an OSHA compliance officer. The district judge could correctly assume, therefore, that the information contained therein was true and correct. Because this information was adequate on its face to establish probable cause there was no need to pursue further discovery . . . .
 
 
 23
 589 F.2d at 1340. The oath of the compliance officer provided sufficient support for the warrant application in this case; it was not necessary that the complaining employees swear to the truth of their statements as well.
 
 
 24
 This argument of Burkart's is part of a more general attack on warrant applications based upon statements of "informants" not brought before the issuing Magistrate. Plaintiff would require some corroboration or other evidence that a complaining employee is credible and reliable and his complaint accurate. This court has already held, however, that because administrative rather than criminal probable cause is the appropriate standard, such a showing is not required in the context of OSHA inspections:
 
 
 25
 Camara and Barlow's do not require that the warrant application set forth the underlying circumstances demonstrating the basis for the conclusion reached by the complainant, or that the underlying circumstances demonstrate a reason to believe that the complainant is a credible person.
 
 
 26
 Gilbert & Bennett, supra, 589 F.2d at 1339. See also Weyerhaeuser Co. v. Marshall, 592 F.2d 373, 377 (7th Cir. 1979). Burkart, in essence, objects to the failure of the warrant application to demonstrate the underlying factual basis for the complainants' allegations. Under Gilbert & Bennett, however, the Magistrate need not be presented with enough evidence to allow him to verify or reevaluate the observations of the employee-informants. 589 F.2d at 1339. The application in this case presented to the Magistrate the substance of the complaints received by OSHA,[8] in sufficient detail for the Magistrate to evaluate OSHA's decision to conduct an inspection based on these complaints. It thus provided "specific evidence of an existing violation":
 
 
 27
 The affidavit established particularized probable cause because it provided the magistrate with the underlying factual data giving rise to the compliance officer's belief that a violation existed.
 
 
 28
 In the Matter of: Establishment Inspection of Marsan Co., 7 OSHC (BNA) 1557, 1559 (N.D.Ind.1979) (citation omitted) (emphasis added).
 
 
 29
 Plaintiff also argues that the warrant application is fatally deficient in terms of detail and specificity. In support of this contention, plaintiff cites cases holding inadequate to establish administrative probable cause applications which state only that a complaint has been received giving OSHA reason to believe an inspection is necessary. See, e. g., Weyerhaeuser Co. v. Marshall, 452 F.Supp. 1375, 1379-80 (E.D.Wis.1978), aff'd, 592 F.2d 373, 378 (7th Cir. 1979); In the Matter of: Establishment Inspection of: Northwest Airlines, Inc., 437 F.Supp. 533, 536 (E.D.Wis.1977), aff'd, 587 F.2d 12, 13 (7th Cir. 1978). These cases, however, do not advance the inquiry in this case. The warrant application at issue here went beyond the conclusory statement that complaints had been received: it described the contents of the complaints. As this court stated in Weyerhaeuser, supra, only a "few additional facts" need be added to a conclusory application to "satisfy the 'specific evidence' manner of establishing probable cause." 592 F.2d at 378 (footnote omitted). The application before us contains more than a "few additional facts" and is not properly compared to the boilerplate applications presented in Weyerhaeuser and Northwest Airlines. On the contrary, it is comparable in terms of specificity and detail to the warrant applications upheld in Gilbert & Bennett, supra, 589 F.2d at 1339[9] and Marsan Co., supra, 7 OSHC (BNA) at 1559.
 
 
 30
 Plaintiff raises two other objections to the issuance of the inspection warrant in this case. Burkart seems to argue that the warrant is invalid because it is based upon employee complaints which are not in writing and signed by the complainant[10] as provided in section 8(f)(1) of the Act, 29 U.S.C. § 657(f)(1).[11] Section 8(f)(1) does not, however, prescribe minimum requirements for acceptance of an employee complaint by OSHA. Rather, it identifies a particular set of circumstances under which OSHA must inspect in response to an employee complaint. We can find no indication in the Act or in judicial interpretations of section 8(f)(1) that OSHA may not determine that an inspection is justified on the basis of an informal employee complaint. Indeed, one court has noted that OSHA
 
 
 31
 is required to investigate all complaints whether formal (signed by someone) or anonymous (from a confidential informant, so to speak).
 
 
 32
 Dravo Corp. v. Marshall, 5 OSHC (BNA) 2057, 2059 (W.D.Pa.1977), aff'd mem., 578 F.2d 1373 (3d Cir. 1978).[12] While we need not decide whether OSHA must inspect in response to all complaints, we can find no basis for holding that only those complaints which comply with section 8(f)(1) may form the basis for an OSHA inspection. In light of this lack of support, Burkart's section 8(f) (1) argument must fail.
 
 
 33
 Finally, Burkart asserts that the warrant application fails to satisfy the Barlow's requirement of "specific evidence of an existing violation," 436 U.S. at 320, 98 S.Ct. at 1824 (emphasis added), because the information contained in it is stale. The employee complaints here were received by OSHA approximately six months and five months prior to issuance of the warrant. The district court took note of this lapse of time but concluded that it did not render the information stale because
 
 
 34
 the nature of the alleged violations are such that the Magistrate could reasonably conclude that the conditions as yet remained unabated.
 
 
 35
 Burkart-Randall Div. of Textron, Inc. v. Marshall, No. 78-4286 (S.D.Ill. July 9, 1979), memo. op. at 3. Burkart challenges this determination.
 
 
 36
 In In the Matter of the Inspection of Central Mine Equipment Co., 7 OSHC (BNA) 1185 (E.D.Mo.), vacated on other grounds, 7 OSHC (BNA) 1907 (8th Cir. 1979), a warrant for an OSHA inspection was upheld despite the fact that it was based on information at least eight months old. Id. at 1189. The district court there held that although an eight month time lapse would make stale information offered in support of a criminal warrant, it would not do so for purposes of an OSHA warrant where "it is reasonable to believe that the violations of the health and safety standards yet remain on the subject premises." Id.[13] In this case, the conditions alleged in the employee complaints are not of a type that will likely disappear through mere passage of time; affirmative action to correct them appears necessary. We therefore agree with the district court that the nature of the alleged conditions makes reasonable the conclusion that violations of the Act remained on Burkart's premises at the time of the warrant application. The information contained in the application is thus not stale.
 
 
 37
 We have reviewed the information presented to the Magistrate and have carefully considered Burkart's arguments challenging the sufficiency of that information to support a finding of administrative probable cause. We find that under the standards set out in Gilbert & Bennett, supra, the warrant application
 
 
 38
 afforded the magistrate sufficient factual data to conclude that a search was reasonable and that a warrant should issue.
 
 
 39
 589 F.2d at 1339. Accordingly, we hold that the warrant authorizing an OSHA inspection of Burkart's Cairo facility was properly issued by the Magistrate after a finding of administrative probable cause.
 
 IV
 
 40
 Burkart's final argument is that even if probable cause to issue an inspection warrant was shown in this case, the warrant which in fact was issued is invalid because it authorizes an overly broad inspection. The warrant authorized an inspection not limited to the areas identified in the employee complaints but rather extending to Burkart's entire Cairo, Illinois facility. Burkart contends that the overly broad warrant permits OSHA to search areas of the facility for which no probable cause has been shown, in clear violation of Fourth Amendment principles. Such a general inspection is, according to Burkart, impermissible where probable cause is established, as in this case, by specific evidence of hazardous or unhealthy conditions within an employer's facility. In addition, a general inspection based upon employee complaints is said to violate section 8(f)(1) of the Act, 29 U.S.C. § 657(f)(1).
 
 
 41
 * There is substantial judicial support for Burkart's Fourth Amendment argument. Although no federal court of appeals has yet expressly ruled on the issue,[14] many of the district courts which have confronted it have concluded that inspection warrants issued in response to specific employee complaints must be limited in scope, if possible, to the subject matter of the complaints. See, e. g., Marshall v. North American Car Co., 476 F.Supp. 698, 706-07 (M.D.Pa.1979); Marshall v. Trinity Industries, Inc., 7 OSHC (BNA) 1851, 1854 (W.D.Okl.1979); In the Matter of the Inspection of: Central Mine Equipment Co., 7 OSHC (BNA) 1185, 1189-90 (E.D.Mo.), vacated on other grounds, 7 OSHC (BNA) 1907 (8th Cir. 1979).[15] These courts acknowledge, however, that a general inspection of an employer's entire workplace will usually be permissible where probable cause is established by a reasonable legislative or administrative plan. See North American Car, supra, 476 F.Supp. at 706; Trinity Industries, supra, 7 OSHC (BNA) at 1854; Central Mine Equipment, supra, 7 OSHC (BNA) at 1190 n. 7. The theory underlying these cases appears to be that the scope of an inspection must not exceed the scope of the evidence used to establish probable cause to conduct the inspection.
 
 
 42
 A number of district courts have adopted the contrary position, holding that once probable cause is established on the basis of an employee complaint, OSHA may inspect the entire premises of the subject employer. See, e. g., In the Matter of: Establishment Inspection of Marsan Co., 7 OSHC (BNA) 1557, 1559 (N.D.Ind.1979); Dravo Corp. v. Marshall, 5 OSHC (BNA) 2057, 2060 (W.D.Pa.1977), aff'd mem., 578 F.2d 1373 (3d Cir. 1978); In the Matter of: Establishment Inspection of: Gilbert & Bennett Mfg. Co., 5 OSHC (BNA) 1375, 1375-76 (N.D.Ill.1977), aff'd, 589 F.2d 1335 (7th Cir.), cert. denied, 444 U.S. 884, 100 S.Ct. 174, 62 L.Ed.2d 113 (1979).[16] These courts maintain that an inspection limited to the substance of the employee complaints will not advance the broad remedial purposes of the Act because employers will be able to present "sanitized" areas to OSHA inspectors while concealing violations of the Act elsewhere on the premises. Marsan Co., supra, 7 OSHC (BNA) at 1559. The requirement that nonconsensual inspections be conducted pursuant to warrants issued upon probable cause protects against possible "fishing expeditions" by OSHA inspectors and adequately safeguards employers' interests. Gilbert & Bennett, supra, 5 OSHC (BNA) at 1375. Furthermore, considerations of administrative efficiency and of minimizing disruptions of employers' operations indicate that a general inspection may be preferable to a number of separate, limited inspections.
 
 
 43
 Our examination of these competing positions and of the policies underlying the Act and the warrant requirement convinces us that the better view is that which permits, absent extraordinary circumstances, general inspections in response to employee complaints.[17] We have already held that because administrative plan inspections, by their nature, are not susceptible to scope limitations, general inspections are permissible in that context. Gilbert & Bennett, supra, 589 F.2d at 1343. A general inspection is thus permissible in a situation where there is no specific reason to suspect that a particular facility may be housing violations of the Act. It would be anomalous to permit general inspections in this context and yet hold that only a limited inspection may be conducted where there is particularized probable cause to believe that violations will be found in the specific facility to be inspected. The fact that the specific nature of employee complaints will often make scope limitations possible, does not make them necessary or advisable. Indeed, one court has found that because employee complaints are often limited in scope, general inspections are preferred in such cases:
 
 
 44
 The fact that the warrant involved in the case at bar is based on specific employee complaints favors a broad, rather than narrow, application of the Secretary's authority, since an employee is normally familiar with limited areas.
 
 
 45
 In the Matter of: Establishment Inspection of: Wisconsin Steel, No. 79 C 4284 (N.D.Ill. Dec. 28, 1979), memo. op. at 2-3.
 
 
 46
 The ultimate requirement of the Fourth Amendment is that any proposed search or inspection be reasonable. See Camara v. Municipal Court, 387 U.S. 523, 539, 87 S.Ct. 1727, 1736, 18 L.Ed.2d 930 (1967). The factors which convinced us in Gilbert & Bennett that it is reasonable to conduct a general inspection of a facility selected for scrutiny under an administrative plan operate at least as strongly in the context of employee complaint inspections.[18] The statute which the inspections are intended to implement is a broad remedial measure designed to ensure that employees are provided with safe workplaces. In the employee complaint situation, there is probable cause to believe that a particular workplace is not entirely safe. The purpose of the Act is best served in such a case by inspecting the entire facility:
 
 
 47
 (R)estriction of the scope of the inspection would frustrate the purposes of OSHA. If the compliance officers are not permitted to conduct thorough inspections, then there would be a severe danger of employers being able to present a special "sanitized" area to the official, while concealing real violations.
 
 
 48
 In the Matter of: Establishment Inspection of: Chicago Magnet Wire Corp., 5 OSHC (BNA) 2024, 2025 (N.D.Ill.1977).
 
 
 49
 Balanced against the implementation of the statute's purpose is the employer's interest in avoiding invasion of its privacy and disruption of its operations. See In the Matter of Worksite Inspection of Quality Products, Inc., 6 OSHC (BNA) 1663, 1666-67 (D.R.I.1978), vacated on other grounds, 592 F.2d 611 (1st Cir. 1979).[19] That interest, however, is adequately protected by the requirement that a nonconsensual inspection be conducted only pursuant to a warrant issued by a neutral Magistrate after a showing of probable cause. The warrant requirement ensures that OSHA inspectors do not conduct mere "fishing expeditions," Chicago Magnet Wire, supra, 5 OSHC (BNA) at 2025, and apprises the employer of the inspection's scope, a function emphasized by the Supreme Court in Barlow's, supra, 436 U.S. at 323, 98 S.Ct. at 1825, and this court in Gilbert & Bennett, supra, 589 F.2d at 1343.[20] The interposition of a neutral Magistrate between inspectors and employers guarantees that inspectors will not exercise unbridled discretion as to when and where to inspect and provides assurances to employers that the inspection is authorized by statute, is permissible under the Constitution, and will be conducted at a reasonable time and in a reasonable manner. Furthermore, to require that OSHA demonstrate probable cause as to every part of the employer's facility
 
 
 50
 would render meaningless the Supreme Court pronouncement in Barlow's that the Secretary's "entitlement to inspect will not depend on his demonstrating probable cause to believe that conditions in violation of OSHA exist on the premises," 436 U.S. at 320, 98 S.Ct. at 1824, and would defeat the federal interest in providing workers with safe working places.
 
 
 51
 Gilbert & Bennett, supra, 589 F.2d at 1344.
 
 
 52
 We hold, therefore, that where probable cause to conduct as OSHA inspection is established on the basis of employee complaints, the inspection need not be limited in scope to the substance of those complaints. In light of the broad remedial purposes of the Act, the strong federal interest in employee health and safety, and the protections provided by the warrant requirement, it will generally be reasonable in such a case to conduct an OSHA inspection of the entire workplace identified in the complaints. There may be cases in which extraordinary circumstances would render such an inspection unreasonably broad, but this is not such a case.
 
 B
 
 53
 In addition to its Fourth Amendment argument, Burkart contends that the Act itself, in section 8(f)(1), 29 U.S.C. § 657(f)(1), prohibits general inspections in response to employee complaints. Section 8(f)(1) requires that, in response to certain employee complaints, OSHA conduct a "special inspection in accordance with the provisions of this section . . . ." 29 U.S.C. § 657(f) (1). Plaintiff argues, in effect, that "special inspection" means "limited inspection." We cannot accept this interpretation. As noted in Part III, supra, we do not read section 8(f)(1) as a limitation upon the Secretary's ability to inspect; rather, we read it as a description of particular circumstances under which the Secretary must inspect. Similarly, nothing in the Act indicates that "special" means "limited." Indeed, section 8(f)(1) states that the inspection shall be conducted in accordance with the provisions of section 8. The only part of section 8 which arguably pertains to the scope of inspections is section 8(a)(2), 29 U.S.C. § 657(a)(2), which authorizes inspection of an employer's entire workplace. In addition, the Secretary's own regulation implementing section 8 of the Act states:
 
 
 54
 Inspections under this section shall not be limited to matters referred to in the (employee) complaint.
 
 
 55
 29 C.F.R. § 1903.11(b). This interpretation of the Act is entitled to deference from the courts and will be given controlling weight as long as it is a reasonable, even if not the most reasonable, construction of the statute. See The Budd Co. v. O.S.H.R.C., 513 F.2d 201, 204-05 (3d Cir. 1975). See also Whirlpool Corp. v. Marshall, 445 U.S. 1, 11, 100 S.Ct. 883, 890, 63 L.Ed.2d 154 (1980). This regulation is a reasonable construction of the statute. Accordingly, we hold that section 8(f)(1) of the Act does not require that OSHA conduct inspections in response to employee complaints limited in scope to the substance of the complaints.
 
 
 56
 We have carefully considered all of plaintiff's arguments on this appeal and find them without merit. Accordingly, the judgment appealed from is affirmed in all respects.
 
 
 57
 AFFIRMED.
 
 
 58
 FAIRCHILD, Chief Judge, concurring.
 
 
 59
 I join in parts I, II and III of Judge Sprecher's opinion. As to the principles which should govern determination of the scope of a search, however, I find much that is persuasive in Judge Wood's dissent. I particularly share the view that this question ordinarily should be identified and presented to the magistrate in the application for the warrant, with whatever other information might be relevant.[1] On the specific facts of this case, however, the locations and types of hazards named in the employee complaints seem to be sufficiently diffuse to sustain the magistrate's determination that a search of the entire workplace was reasonable. For that reason I join in the decision to affirm the judgment of the district court.
 
 
 60
 HARLINGTON WOOD, Jr., Circuit Judge, dissenting.
 
 
 61
 The Occupational Safety and Health Administration (OSHA) received two complaints from employees of appellant Burkart-Randall Division of Textron, Inc. (Burkart-Randall). The substance of those complaints as summarized in the warrant application presented to the magistrate was
 
 
 62
 (t)hat various hygiene hazards existed in the press department; that the rest rooms were in poor repair because there was (sic) sewer gases leaking from broken plumbing and this compounded by very poor ventilation; that the eating areas were unsanitary; that there were inadequate fire escapes near the production line.
 
 
 63
 The application further recited that based on the two complaints, OSHA had determined that there were "reasonable grounds to believe that such violations exist." Although the application effectively concedes that probable cause exists only as to the matters asserted in the complaint, OSHA sought and secured a warrant authorizing an inspection covering "not only violations and dangers alleged in the complaints, but the entire establishment of the employer."[1] To the extent the warrant authorized inspection in areas of Burkart-Randall's facility for which there was no showing of any likelihood that violations existed, it contravenes the fourth amendment to the Constitution. I therefore respectfully dissent.
 
 
 64
 Since the warrant application presented to the magistrate in this case contains no information concerning the layout or predominant use of the Burkart-Randall facility the magistrate was not in a position to consider the likelihood that violations existed in areas not mentioned in the employee complaints. I find it difficult to fathom how, absent this information, the magistrate and now this court can reach the conclusion that the inspection was reasonable. We are left in the dark along with the magistrate on such basic questions as, for example, whether the press department occupies a single small room or is the facility's predominant work area; whether the facility is composed of one or more buildings, and if the latter, whether the complaints deal with conditions in each building. Without answers to such questions, the magistrate had no basis upon which to evaluate the likelihood that violations existed in other areas. In the extreme he may have authorized a search of a mammoth multi-building facility based on two very limited employee complaints. We do not know on the record before us nor did the magistrate know on the record before him. Approval of a general search warrant on such sparse information is indeed approval of general warrants in every conceivable case.
 
 
 65
 This court recently addressed an overbreadth challenge to a general warrant secured pursuant to a neutral administrative plan. In the Matter of Establishment Inspection of Gilbert & Bennett Manufacturing Co., 589 F.2d 1335 (7th Cir.), cert. denied, 444 U.S. 884, 100 S.Ct. 174, 62 L.Ed.2d 113 (1979). In approving the general warrant, we noted that "(b)ecause the exact location of violations cannot be known prior to entering the establishment, a narrow, restricted warrant would severely defeat the purposes of the Act." Id. at 1343. We were concerned that employers might maintain sanitized areas for inspection while concealing serious violations. Id. The same considerations do not apply where the specific complaints inform OSHA of the precise location of likely violations. OSHA remains free to protect against selective sanitization by inspecting at another time pursuant to a reasonable administrative plan. The balance between the employer's privacy interest and OSHA's statutory mandate is thus preserved.
 
 
 66
 It is not anomalous to permit general inspections where probable cause is supplied by a neutral plan but to limit inspections where probable cause is supplied by particularized employee complaints. Rather, the dichotomy is merely a recognition of the notion inherent in the fourth amendment that the scope of a warrant shall be tailored to the showing of probable cause. Underlying Gilbert & Bennett is Marshall v. Barlow's, Inc., 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), which established that the flexible probable cause standards of See v. City of Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), and Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), are satisfied by the promulgation of a neutral administrative inspection plan. The adoption of an administrative plan presupposes some general finding and determination of necessity to inspect within a particular industry, which serves as a basis for a general warrant. Specific employee complaints, on the other hand, may certainly, as here, supply a sufficient level of cause as to the subjects of those complaints. They may also provide sufficient cause for areas proximate in space and quality to the subjects of the complaint. Furthermore, where complaints are of such quality or in such quantity to indicate a reasonable likelihood that violations exist throughout a facility, a general warrant may be appropriate. In other cases, where the quality or quantity of complaints indicates a reasonable likelihood that violations exist in other specific areas of a facility, a warrant tailored to cover those areas in addition to the areas complained of may be appropriate. But where, as here, the magistrate lacks specific information regarding plant layout and the relation of that layout to the complaints, issuance of a general warrant to inspect all areas is unreasonable and therefore unconstitutional. Such issuance implies that the magistrate found sufficient cause in areas of which he had no knowledge. Consideration of the statute's remedial purpose and of administrative convenience, while certainly substantial, cannot supply probable cause, even under the most flexible standard, where it does not otherwise exist. The employee complaints that initiated this general warrant mentioned only unsanitary rest rooms, eating areas, and inadequate fire escapes all in the press department. I believe the absolute constitutional limit of the warrant in this case, if it is to be broadened beyond the press department, would be to authorize inspection only of facilities similar to those set forth in the employee complaints, i. e., rest rooms, eating areas, and areas relating to fire safety.
 
 
 67
 I therefore would reverse the district court's judgment and dissolve the warrant.
 
 
 
 [1]
 The application for the inspection warrant submitted to the Magistrate described the employee complaints as follows:
 The complaints alleged, in pertinent part, that certain unsafe and unhealthful work conditions exist at the described workplace to which employees are exposed, to wit:
 That various hygiene hazards existed in the press department; that the rest rooms sewer gases leaking from broken plumbing and this compounded by very poor ventilation; that the eating areas were unsanitary; that there were inadequate fire escapes near the production line.
 The complaints alleged that these conditions threatened serious physical harm to employees, and an inspection by OSHA was requested. The complaints indicated that the existence of these dangerous conditions may be in violation of the Act and/or the regulations issued pursuant thereto.
 Plaintiff's Appendix at 1-2.
 
 
 [2]
 Section 8(a) of the Act provides:
 (a) In order to carry out the purposes of this chapter, the Secretary, upon presenting appropriate credentials to the owner, operator, or agent in charge, is authorized
 (1) to enter without delay and at reasonable times any factory, plant, establishment, construction site, or other area, workplace or environment where work is performed by an employee of an employer; and
 (2) to inspect and investigate during regular working hours and at other reasonable times, and within reasonable limits and in a reasonable manner, any such place of employment and all pertinent conditions, structures, machines, apparatus, devices, equipment, and materials therein, and to question privately any such employer, owner, operator, agent or employee.
 29 U.S.C. § 657(a).
 
 
 [3]
 Plaintiff acknowledges the apparent applicability of our decision in Gilbert & Bennett. Burkart argues, however, that the issue of the standard of probable cause to be applied in employee complaint situations had been mooted in Gilbert & Bennett, thus making this court's pronouncements "mere obiter dicta." Brief of Plaintiff at 4. Burkart goes on to urge this court to reject its language in Gilbert & Bennett to the extent that that case may be considered governing precedent in cases such as the present one. Brief of Plaintiff at 4-5, 6. Our pronouncements in Gilbert & Bennett were not "mere obiter dicta " and, as is discussed in the text, infra, we decline to reject them in this case
 
 
 [4]
 Plaintiff argues that this clear statement was intended by the Barlow's Court to apply only to inspections conducted pursuant to a legislative or administrative plan. The Court's intention can, in plaintiff's view, be discerned from the sentence following the language quoted in the text. This sentence begins: "For purposes of an administrative search such as this, . . . " 436 U.S. at 320, 98 S.Ct. at 1824. Since Barlow's involved an administrative plan inspection, plaintiff argues that this language indicates that relaxed probable cause standards were intended to be applied only to such inspections. The sentence cited by plaintiff goes on, however, to state that probable cause to conduct such an administrative search may be established either by specific evidence of an existing violation or by a showing of a reasonable legislative or administrative plan. Thus, the more logical interpretation of the Court's language is that criminal probable cause is not required for either an employee complaint or administrative plan inspection
 
 
 [5]
 Plaintiff quotes the following language from Tyler in support of its argument:
 For routine building inspections, a reasonable balance between these competing concerns is usually achieved by broad legislative or administrative guidelines specifying the purpose, frequency, scope, and manner of conducting the inspections. In the context of investigatory fire searches, which are not programmatic but are responsive to individual events, a more particularized inquiry may be necessary.
 436 U.S. at 507, 98 S.Ct. at 1949. This language must be considered limited to the context of fire investigations. As one commentator noted, it
 is inapplicable to OSHA inspections, because they usually contain elements of both routine building inspections (or code-enforcement inspections) and investigatory searches. It would be paradoxical, moreover, to hold that a "routine" (programmed) OSHA inspection may be based on broad legislative or administrative guidelines, but that an OSHA inspection conducted after a fatality or pursuant to an employee complaint (unprogrammed) requires a more particularized inquiry.
 Rothstein, OSHA Inspections After Marshall v. Barlow's, Inc., 1979 Duke L.J. 63, 91 (footnotes omitted) (emphasis in original). This commentator goes on to observe:
 While the filing of an employee complaint should not make the issuance of a warrant automatic, . . . the Secretary should not be "penalized" and held to a higher standard of probable cause simply because further evidence exists of the need to inspect.
 Id. at 91 n. 178. Even if Tyler is considered relevant in the context of an OSHA inspection, Tyler 's holding, quoted in the text, infra, demonstrates that administrative probable cause is the appropriate standard as long as the investigation, even though not programmatic, retains its noncriminal character. See 436 U.S. at 511-12, 98 S.Ct. at 1951.
 Plaintiff's citation of In re Brickner, 453 F.Supp. 91 (E.D.Wis.1978), similarly does not advance its position. Brickner involved an attempt by the Internal Revenue Service to enter property not belonging to an indebted taxpayer in order to seize property of the taxpayer in satisfaction of his liability. As the Brickner court found, this situation is far removed from "an administrative or regulatory type search." Id. at 93. The situation in Brickner differs so substantially from the OSHA inspection involved in this case that Brickner is not a useful guide to the proper interpretation of Barlow's.
 
 
 [6]
 See, e. g., Marshall v. W & W Steel Co., 604 F.2d 1322, 1326 (10th Cir. 1979); Weyerhaeuser Co. v. Marshall, 592 F.2d 373, 377 (7th Cir. 1979); Plum Creek Lumber Co. v. Hutton, 608 F.2d 1283, 1287 (9th Cir. 1979); Marshall v. North American Car Co., 476 F.Supp. 698, 703 (M.D.Pa.1979); Marshall v. Horn Seed Co., 7 OSHC (BNA) 1182, 1184 (W.D.Okl.1979); In the Matter of: Establishment Inspection of: Chicago Magnet Wire Corp., 5 OSHC (BNA) 2024, 2025 (N.D.Ill.1977). Cf. In re Carlson, 580 F.2d 1365, 1377, 1381 (10th Cir. 1978); U. S. v. Consolidation Coal Co., 560 F.2d 214, 218 (6th Cir. 1977), reinstated after remand, 579 F.2d 1011, 1012 (6th Cir. 1978), cert. denied, 439 U.S. 1069, 99 S.Ct. 836, 59 L.Ed.2d 34 (1979)
 
 
 [7]
 The portion of the application which is said to supply "specific evidence of an existing violation" is quoted at note 1 supra
 
 
 [8]
 Plaintiff suggests that the warrant application be found fatally defective because it does not state that the particular compliance officer applying for the warrant personally received the employee complaints or had personal knowledge of the circumstances surrounding their receipt. Plaintiff cites Marshall v. Horn Seed Co., 7 OSHC (BNA) 1182 (W.D.Okl.1979), in support of this proposition. In Horn Seed, however, the application also failed to indicate that the complaints received by OSHA came from employees of the subject employer. Id. at 1185. In addition, the compliance officer there specifically testified at a show cause hearing that she had not received the complaints and did not know who had. Id. at 1183. Therefore, Horn Seed does not hold that an application's failure to state that the affiant personally received the employee complaint referred to in the application, without more, renders the application fatally defective. To the extent that Horn Seed can be read to support such a position, it is inconsistent with the probable cause standard described in Gilbert & Bennett, supra, 589 F.2d at 1339-40
 
 
 [9]
 In Gilbert & Bennett, this court considered the allegations of two paragraphs of the application relevant to the probable cause determination. The first paragraph described the employee complaint in terms comparable to the application in this case; the second paragraph contained information pertaining to the employer's compliance history. 589 F.2d at 1339. We specifically found the description of the employee complaint sufficient to justify issuance of a warrant. Id. We then considered the information as to the employer's compliance history and found that it did not provide sufficient evidence for a finding of probable cause when read alone but did supply relevant background information when read in conjunction with the description of the employee complaint. Id. at 1339-40
 
 
 [10]
 There appears to be some confusion as to whether both or only one of the complaints was unwritten. Brief of Defendants at 4 n. 3. It is clear that at least one complaint was oral; therefore, the effect of 29 U.S.C. § 657(f)(1) is a relevant concern regardless of which view of the record is correct
 
 
 [11]
 Section 8(f)(1) of the Act provides:
 (f)(1) Any employees or representative of employees who believe that a violation of a safety or health standard exists that threatens physical harm, or that an imminent danger exists, may request an inspection by giving notice to the Secretary or his authorized representative of such violation or danger. Any such notice shall be reduced to writing, shall set forth with reasonable particularity the grounds for the notice, and shall be signed by the employees or representative of employees, and a copy shall be provided the employer or his agent no later than at the time of inspection, except that, upon the request of the person giving such notice, his name and the names of individual employees referred to therein shall not appear in such copy or on any record published, released, or made available pursuant to subsection (g) of this section. If upon receipt of such notification the Secretary determines there are reasonable grounds to believe that such violation or danger exists, he shall make a special inspection in accordance with the provisions of this section as soon as practicable, to determine if such violation or danger exists. If the Secretary determines there are no reasonable grounds to believe that a violation or danger exists he shall notify the employees or representative of the employees in writing of such determination.
 29 U.S.C. § 657(f)(1).
 
 
 [12]
 See also Aluminum Coil Anodizing Corp., 1973-1974 OSHD (CCH) P 17,185 (OSHRC 1974), in which the Occupational Safety and Health Review Commission ruled that the Secretary may conduct inspections on the basis of complaints not in compliance with section 8(f)(1)
 
 
 [13]
 The district court did not view the time lapse in isolation; rather it was viewed as one of several relevant factors in evaluating probable cause:
 In determining the existence of probable cause to issue an administrative search warrant to inspect an employment location the age of the proffered information is but one factor to be considered with others such as the nature of the alleged violation, the nature of the work being performed, the nature of the employment facility, and the other descriptive information proffered in the application.
 Central Mine Equipment, supra, 7 OSHC (BNA) at 1189.
 
 
 [14]
 In In the Matter of the Inspection of: Central Mine Equipment Co., 7 OSHC (BNA) 1907 (8th Cir. 1979), the Eighth Circuit commented on the issue even though it did not decide it. The court noted that a general inspection was permissible when conducted pursuant to an administrative plan but suggested that Michigan v. Tyler, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), required that inspections conducted pursuant to employee complaints be limited in scope to the substance of the complaints. 7 OSHC (BNA) at 1907-08 n. 1. As discussed in Part II, supra, we believe that Tyler has limited applicability in the context of OSHA inspections. Furthermore, the passages from Tyler cited by the Eighth Circuit do not deal with the scope of administrative inspections but rather with the balancing process to be used in determining whether probable cause exists in particular cases. The Eighth Circuit concluded that the scope of an OSHA inspection should be one of a number of factors entering into this balancing process, and strongly suggested that scope be limited whenever possible. Id. As discussed in the text, infra, we do not believe that this position is consistent with the broad remedial purposes of the Act or with the Supreme Court's opinion in Barlow's, supra
 Plaintiff cites U. S. v. Consolidation Coal Co., 560 F.2d 214 (6th Cir. 1977), reinstated after remand, 579 F.2d 1011 (6th Cir. 1978), cert. denied, 439 U.S. 1069, 99 S.Ct. 837, 59 L.Ed.2d 34 (1979), in support of its limited scope argument. Consolidation Coal did not consider the statute involved in the present case. In addition, it involved, not a purely administrative inspection, but a search of company offices and seizure of records resulting in criminal prosecutions of the company and some of its officers. Consolidation Coal is not, therefore, closely analogous to the instant case.
 
 
 [15]
 See also Whittaker Corp. v. OSHA, 6 OSHC (BNA) 1492, 1494-95 (M.D.Pa.1978), appeal dismissed, 594 F.2d 855 (3d Cir. 1979); In the Matter of: Establishment Inspection of: Urick Property, 472 F.Supp. 1193, 1194-95 (W.D.Pa.1979). Cf. Marshall v. Wollaston Alloys, Inc., 479 F.Supp. 1102, 1104 (D.Mass.1979); Marshall v. Pool Offshore Co., 467 F.Supp. 978, 982 (W.D.La.1979)
 
 
 [16]
 See also In the Matter of: Establishment Inspection of: Chicago Magnet Wire Corp., 5 OSHC (BNA) 2024, 2024-25 (N.D.Ill.1977); In the Matter of: Establishment Inspection of: Wisconsin Steel, No. 79 C 4284 (N.D.Ill. Dec. 28, 1979), memo. op. at 2-3. In another case, Marshall v. Berwick Forge & Fabricating Co., 474 F.Supp. 104 (M.D.Pa.1979), the court permitted a general inspection in response to employee complaints but suggested that, had there been fewer alleged violations and a less extensive record of past violations, it would have limited the scope of the inspection. Id. at 113. Nonetheless, only fifteen per cent of the facility was implicated in the complaints and a general inspection was still permitted
 
 
 [17]
 At least one commentator concurs in this result, finding that the position taken by the district court in Gilbert & Bennett represents the "better view." See Rothstein, OSHA Inspections After Marshall v. Barlow's, Inc., 1979 Duke L.J. 63, 96 & n. 198
 
 
 [18]
 A number of courts have cited this portion of the Gilbert & Bennett opinion as support for their conclusion that general inspections are permissible in response to employee complaints. See, e. g., In the Matter of: Establishment Inspection of: Wisconsin Steel, No. 79 C 4284 (N.D.Ill. Dec. 28, 1979); In the Matter of: Establishment Inspection of Marsan Co., 7 OSHC (BNA) 1557 (N.D.Ind.1979). In fact, one of the cases this court cited in support of its finding in Gilbert & Bennett that a general inspection is permissible pursuant to an administrative plan, was a case upholding such inspections in response to employee complaints. See Dravo Corp. v. Marshall, 5 OSHC (BNA) 2057 (W.D.Pa.1977), aff'd mem., 578 F.2d 1373 (3d Cir. 1978), cited in Gilbert & Bennett, supra, 589 F.2d at 1343
 In addition, in Gilbert & Bennett this court had before it the precise issue now raised by Burkart. One of the orders on appeal in that case authorized a general inspection in response to an employee complaint. The employer argued in its brief on appeal that the inspection should be limited in scope to the substance of the complaint. See Appellant's Supplemental Brief, In the Matter of: Establishment Inspection of: Gilbert & Bennett Mfg. Co., 589 F.2d 1335 (7th Cir. 1979), at 27-30. Although we did not discuss this argument in the portion of the opinion addressing employee complaint inspections, we did affirm the district court's order in all respects. Thus, the argument now advanced by Burkart has been presented to this court before and has been rejected.
 
 
 [19]
 As was emphasized by the district court in Quality Products, supra, the employer's interest in the privacy of the workplace is "minimal," and not of substantial importance in the face of "the important social interest in protecting the safety of those workers who have been voluntarily admitted to the premises . . . ." 6 OSHC (BNA) at 1667
 
 
 [20]
 Indeed, in his dissent in Barlow's, Justice Stevens observed that the warrant requirement established by the Supreme Court in that case did not purport to limit the scope of inspections more strictly than the Act itself did in section 8(a)(2), 29 U.S.C. § 657(a)(2). As Justice Stevens read the majority opinion, the warrant was intended simply to apprise the employer of the inspection's scope, not to limit it. Barlow's, supra, 436 U.S. at 335-36, 98 S.Ct. at 1832 (Stevens, J., dissenting)
 
 
 [1]
 See also Note, Administrative Inspections Under the Fourth Amendment, 15 Colum. J. L. & Soc. Prob. 61, 95 (1979)
 
 
 [1]
 The warrant issued by the magistrate reads in pertinent part:
 YOU ARE AUTHORIZED to enter the above described premises during regular working hours or at other reasonable times, and to inspect and investigate in a reasonable manner and to a reasonable extent (including but not limited to the taking of photographs and samples, and the questioning privately any owner, operator, agent, employer or employee of the establishment), the workplace or environment where work is performed by employees of the employer and all pertinent conditions, structures, machines, apparatus, devices, equipment, materials, and all other things therein (including records, files, papers, processes, controls, and facilities) bearing on whether this employer is furnishing to its employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical injuries to its employees, and whether this employer is complying with the occupational safety and health standards promulgated under the Act and the rules, regulations, and orders issued pursuant to the Act.